UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MASON ROBERT JAMES HICKS, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF MILLERSVILLE et al., <br><br> Defendants. | Case No. 3:21-cv-00837 <br><br> Judge Aleta A. Trauger <br> Magistrate Judge Alistair E. Newbern |

To: The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This civil rights action brought under 42 U.S.C. § 1983 arises from pro se Plaintiff Mason Robert James Hicks's arrest and prosecution for mailbox tampering. (Doc. No. 1.) Hicks brings claims of false arrest and malicious prosecution under the Fourth Amendment to the United States Constitution and Tennessee common law against Defendants Judge Dee David Gay; the State of Tennessee; the City of Millersville, Tennessee; Millersville Police Officers Melissa Pearce and Blake Riley; and Millersville Assistant Police Chief Dustin Carr. (*Id.*)

Now before the Court are the State and Gay's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) (Doc. No. 18), to which Hicks has not responded, and Pearce and Riley's motion to dismiss under Rule 12(b)(6) (Doc. No. 24), to which Hicks has responded in opposition (Doc. No. 39). Pearce and Riley have filed a reply in support of their motion (Doc. No. 40).[1]

---

[1] The City of Millersville and Carr have answered Hicks's complaint. (Doc. Nos. 27, 28.)

For the reasons that follow, the Magistrate Judge will recommend that the State and Gay's motion to dismiss be granted and Pearce and Riley's motion to dismiss be granted in part and denied in part.

## I. Background

### A. Factual Background[2]

On March 18, 2019, the Millersville Police Department received a report that a suspicious person was looking into mailboxes in a residential neighborhood. (Doc. No. 1.) Pearce was dispatched to investigate and spoke to a police officer who lived in the neighborhood. (*Id.*) Pearce then informed other Millersville officers that there had been "a black Mercedes in the neighborhood that should not be there." (*Id.* at PageID# 4, ¶ 5.3.)

Pearce also spoke to witness Allison Absher, who told her that "the suspicious person was a white male, approx[imately]" five feet and eleven inches tall, with a "slender build and wearing a light grey hoodie that was covering his face." (*Id.* at PageID# 5, ¶ 5.5.) Absher reported that the individual had looked into three mailboxes and opened a car door. (Doc. No. 1.) The car and one of the mailboxes that Absher identified were located in front of Hicks's home. (*Id.*)

Riley, acting at Carr's direction, stopped a black Mercedes in another neighborhood. (*Id.*) Riley identified the driver, a five-foot-ten white male, then allowed him to leave. (*Id.*) Pearce later testified that the driver of the Mercedes did not match Absher's description of the suspect. (*Id.*)

Hicks noticed the police officers in his neighborhood and came outside to see what was happening. (*Id.*) Pearce took several pictures of Hicks, who was wearing a tan hooded sweatshirt, and showed them to Absher. (*Id.*) Absher told Pearce that she was "'pretty sure'" that Hicks "was

---

[2]  The facts in this Report and Recommendation are taken from Hicks's complaint (Doc. No. 1) and are presumed to be true for purposes of resolving the defendants' motions to dismiss. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

the person she saw[,]" and Pearce informed the other officers that Absher believed Hicks was the individual they were looking for. (*Id.* at PageID# 6, ¶ 5.9.) Hicks alleges that Pearce later stated that she went to each of the homes where mailbox tampering had been reported and told the residents that Hicks had been looking in their mailboxes, and that all of the residents told her they wanted to press charges. (Doc. No. 1.)

When Hicks started to cross the street to speak to a neighbor, Pearce yelled for him to stop so that she could talk to him. (*Id.*) Hicks responded that "he doesn't talk to Millersville Police without a lawyer." (*Id.* at PageID# 6–7, ¶ 5.12.) Pearce then arrested and handcuffed Hicks, and did not respond when Hicks asked why he was being arrested. (Doc. No. 1.) Hicks's cell phone began to ring, and Hicks told Pearce that his mother was calling and asked if he could answer. (*Id.*) Pearce said no and "made fun of him . . . ." (*Id.* at PageID# 7, ¶ 5.13.)

Riley transported Hicks to the Millersville Police Department, where Riley wrote an arrest warrant affidavit under Carr's supervision. (Doc. No. 1.) Carr told Riley to rewrite the affidavit, stating, "'you can't make it sound like we are having him arrested[;] you have to say that they wanted him arrested[.]'" (*Id.* at PageID# 7, ¶ 5.14.) The arrest warrant, which was based on information provided by Pearce, "stated [that] officers had spoken to several witnesses[,]" "w[ere] given a good description of a suspect," and "that multiple witnesses identified . . . Hicks as the suspect." (*Id.* at ¶ 5.15.) Hicks was charged with one count of mailbox tampering and taken to the Sumner County Jail. (Doc. No. 1.)

Hicks asserts that the arrest was actually based on "a 'limited description'" provided by one witness. (*Id.* at PageID# 11, ¶ 5.34.) Hicks alleges that he was the only person in the photographs Pearce showed Absher, that Pearce told Absher his name while showing her the photos, that Absher's account of the identification contradicts Pearce's testimony, and that "Pearce

lost, destroyed or deleted the photographic evidence that" she showed to Absher. (*Id.* at PageID# 12, ¶ 5.42.) He also claims "that the Millersville Police Department does not have a policy/training on how or when to conduct photo line ups[,]" "how or when to make [a] custodial arrest for crimes occurring outside the officer[']s presence[,]" and "evidence collection and retention." (*Id.* at PageID# 10, ¶¶ 5.29–5.31.)

Hicks appeared in court for a preliminary hearing on July 15, 2019. (Doc. No. 1.) Both Absher and Pearce testified at the preliminary hearing. (*Id.*) The case was bound over to a Sumner County grand jury, which returned an indictment on four counts of mailbox tampering. (*Id.*) All four counts were dismissed on November 5, 2020, at the request of the Sumner County District Attorney. (*Id.*)

### B. Procedural History

Hicks initiated this action on November 4, 2021, by filing a complaint against the State of Tennessee, the City of Millersville, Gay, Pearce, Riley, and Carr. (*Id.*) The complaint asserts false arrest and malicious prosecution claims against Pearce, Riley, and Carr under 42 U.S.C. § 1983 and Tennessee common law and a municipal liability claim against the City of Millersville under § 1983 and the Tennessee Governmental Tort Liability Act (GTLA). (*Id.*) The complaint does not identify what claims Hicks asserts against the State or Gay. Hicks seeks compensatory and punitive damages, costs, and attorney's fees. (*Id.*)

The State and Gay filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[3] (Doc. Nos. 18, 19.) The State and Gay argue that any claims against them should be dismissed because the complaint does not contain any factual allegations against Gay, the

---

[3] The State and Gay refiled their motion to dismiss and memorandum with corrected certificates of service on February 14, 2022. (Doc. Nos. 21, 22.)

doctrine of judicial immunity bars any claim for money damages against Gay in his individual capacity, and sovereign immunity bars any § 1983 claims against the State. (Doc. No. 19.)

Pearce and Riley filed a motion to dismiss Hicks's claims against them under Rule 12(b)(6). (Doc. Nos. 24, 25.) They argue that Hicks's state and federal false arrest claims are barred by the applicable statutes of limitations, that Hicks has not alleged sufficient facts to state a malicious prosecution claim against Riley, and that the doctrine of collateral estoppel bars Hicks's claims that there was not probable cause for his arrest and prosecution because the state court found probable cause to support the charges against him in a preliminary hearing. (Doc. No. 25.)

Hicks responded in opposition to Pearce and Riley's motion to dismiss, arguing that he has alleged sufficient facts to state a malicious prosecution claim against Riley and that collateral estoppel does not bar his claims against Pearce and Riley. (Doc. No. 39.) In reply, Pearce and Riley argue that Hicks has abandoned his state-law malicious prosecution claims against Riley and his false arrest claims against both defendants by failing to respond to their arguments regarding those claims. (Doc. No. 40.) They also reiterate that the finding of probable cause in Hicks's preliminary hearing "is fatal to [his] claims" in this action. (*Id.* at PageID# 209.)

Hicks did not respond to the State and Gay's motion to dismiss and, instead, moved for an extension of time to amend the complaint. (Doc. No. 33.) The Court ordered Hicks to "file an amended complaint or respond to Gay and the State of Tennessee's motion to dismiss by no later than June 21, 2022." (Doc. No. 52, PageID# 327–28.) That deadline has passed, and Hicks has not filed an amended complaint or a response to Gay and the State's motion to dismiss. The Court will therefore consider that motion to be unopposed.

II.   **Legal Standard**

   A.   **Federal Rule of Civil Procedure 12(b)(1)**

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States," and several other categories of cases not at issue here.[4] U.S. Const. art. III, § 2, cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress has also granted federal courts diversity jurisdiction over civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Whether the Court has subject-matter jurisdiction is a "threshold" question in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Id.* at 104. A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the

---

[4]   For example, cases involving ambassadors, public ministers, and consuls and cases between two states or in which the United States is a party. U.S. Const. art. III, § 2, cl. 1.

sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 816–17 (6th Cir. 2017) (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). A factual attack challenges the allegations supporting jurisdiction, raising "a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Id.* at 817 (quoting *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330). District courts reviewing factual attacks have "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

### B. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked

assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Hicks appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**III.    Analysis**

    **A.    The State and Gay's Motion to Dismiss**

Gay argues that, although he is identified as a defendant in the caption of Hicks's complaint, the complaint includes no factual allegations about him or his conduct. "Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints." *McElyea v. Kerns*, No. 3:16-cv-3157, 2017 WL 782975, at *3 (M.D. Tenn. Mar. 1, 2017) (first citing *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); then citing *Griffin v. Montgomery* No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000); and then citing *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990)). The complaint does not contain any factual allegations regarding Gay, much less "'sufficient factual matter' to render [a] legal claim plausible[.]" *Fritz*, 592 F.3d at 722 (quoting *Iqbal*, 556 U.S. at 678). Thus, Hicks has not stated any claim on which relief can be granted against Gay.

The State of Tennessee argues that it is entitled to sovereign immunity under the Eleventh Amendment from Hicks's claims for money damages. (Doc. No. 19.) The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although by its terms the Amendment applies only to suits against a state by citizens of another state, the Supreme Court has extended it to suits by citizens against their own states." *Babcock v. Michigan*, 812 F.3d 531, 533 (6th Cir. 2016) (citing *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908) applies." *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). None of these exceptions applies here. The State has not consented to this suit or waived its immunity from Hicks's claims, *see Dibrell v. State*, No. E2021-00405-COA-R3-CV, 2022 WL 484563, at *5 (Tenn. Ct. App. Feb. 17, 2022) (explaining that the State of Tennessee has not waived its immunity from common law malicious prosecution and false imprisonment claims); "[s]ection 1983 does not abrogate Eleventh Amendment immunity[,]" *Boler*, 865 F.3d at 410 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); and the *Ex parte Young* doctrine applies to suits for prospective injunctive and declaratory relief against state officials, not suits for money damages "against the state itself[,]" *Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016) (citing *S&M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)).

Accordingly, the State and Gay's motion to dismiss should be granted.

### B. Pearce and Riley's Motion to Dismiss

#### 1. False Arrest Claims Under § 1983 and Tennessee Law

Pearce and Riley argue that Hicks's false arrest claims under the Fourth Amendment and Tennessee common law are barred by the applicable statutes of limitations. "The statute of limitations is an affirmative defense, and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim[.]" *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (first citing Fed. R. Civ. P. 8(c); then citing Fed. R. Civ. P. 8(a); and then citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Accordingly, "a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim upon the statute of limitations." *Id.* There is an exception to this general rule, however, when "the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case, . . . dismissing the claim under Rule 12(b)(6) is appropriate." *Id.* (citing *Jones*, 549 U.S. at 215).

Because § 1983 does not specify a limitations period, courts apply "the state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). In Tennessee, the applicable limitations period is one year. *Id.* (citing Tenn. Code Ann. § 28-3-104). However, "[t]he date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Id.* at 635. Generally, "the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.*

Pearce and Riley argue, and Hicks does not dispute, that the one-year statute of limitations began to run on Hicks's § 1983 false arrest claims "[a]t the very latest, . . . on the date of his preliminary hearing—July 15, 2019[.]" (Doc. No. 25, PageID# 89.) The Supreme Court has held that the statute of limitations for a false arrest claim under § 1983 begins to run at the time of arrest or, if the arrest is followed by criminal proceedings, "at the time the claimant becomes detained

10
Case 3:21-cv-00837   Document 53   Filed 08/22/22   Page 10 of 20 PageID #: 338

pursuant to legal process." *Wallace v. Kato*, 549 U.S. 384, 397 (2007); *see also id.* at 390 ("'If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.'" (citation omitted)).

The complaint states that Hicks appeared for a preliminary hearing on July 15, 2019, after which the case was "bound over to the Grand Jury . . . ." (Doc. No. 1, PageID# 8, 10, ¶¶ 5.17, 5.27.) Therefore, the statute of limitations on Hicks's § 1983 false arrest claim began to run no later than July 15, 2019, and expired on July 15, 2020. *See Wallace*, 549 U.S. at 397; *Freeman v. Harris*, Civ. No. 3:10-0071, 2010 WL 5279942, at *1–2 (M.D. Tenn. Dec. 17, 2010) (finding that one-year statute of limitations for false arrest claim brought under § 1983 began to run on date of preliminary hearing). Hicks did not initiate this action until November 4, 2021. (Doc. No. 1.) Accordingly, his claims for false arrest under § 1983 are time-barred.

Hicks also does not contest Pearce and Riley's argument that his state-law false arrest claims are time-barred because the statute of limitations began to run on those claims at the time he was arrested. Claims for false arrest under Tennessee law "accrue[ ] on the date of the false arrest . . . ." *Chase v. Funk*, No. 3:16-cv-01579, at *5 n.5 (M.D. Tenn. Dec. 9, 2016) (first citing *Dirks v. Tudors*, No. E2008-01384-COA-R3-CV, 2009 WL 1372180, at *1 (Tenn. Ct. App. May 18, 2009); and then citing *Gray v. 26th Jud. Drug Task Force*, Nos. 02A01-9609-CV-00218, C95-279, 1997 WL 379141, at *2 (Tenn. Ct. App. July 8, 1997)). The complaint states that Hicks was arrested on March 18, 2019, more than one year before he initiated this action. (Doc. No. 1.) His false arrest claims under Tennessee law are also time-barred and, like his claims under § 1983, must be dismissed.

### 2. Malicious Prosecution Claims Under § 1983 and Tennessee Law

In the Sixth Circuit, the elements of a malicious prosecution claim under the Fourth Amendment are that (1) "'a criminal prosecution was initiated against the plaintiff'"; (2) "'the

defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute"'"; (3) "'there was a lack of probable cause for the criminal prosecution'"; (4) "'"as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty" . . . apart from the initial seizure'"; and (5) "'the criminal proceeding must have been resolved in the plaintiff's favor.'" *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017) (alterations in original) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)). A claim for malicious prosecution under Tennessee law requires a plaintiff to show "that (1) a prior suit or judicial proceeding was instituted without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated in plaintiff's favor." *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 248 (Tenn. 1992).

### a. Hicks's Allegations Against Riley

Riley argues that Hicks has not sufficiently pleaded malicious prosecution because he has not made any "allegation that Officer Riley participated in any way in the prosecution of [Hicks] . . . ." (Doc. No. 25, PageID# 94.) "Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." *Sykes*, 625 F.3d at 311 n.9. The officer must have "'participate[d] in a way that aid[ed] in the decision, as opposed to passively or neutrally participating.'" *Miller v. Maddox*, 866 F.3d 386, 390 (6th Cir. 2017) (quoting *Sanders v. Jones*, 845 F.3d 721, 731 (6th Cir. 2017)). In *Sykes*, the Sixth Circuit held that this factor may be satisfied if an officer "deliberately made false or misleading statements and omitted material information from his warrant application in order to manufacture probable cause." *Sykes*, 625 F.3d at 306; *see also Miller v. Maddox*, No. 3:13-1270, 2014 WL 4960961, at *1 (M.D. Tenn. Sept. 30, 2014) (denying motion to dismiss malicious prosecution claim where plaintiff alleged that defendant officer had sworn out arrest warrant

containing false statements and a night commissioner issued an arrest warrant and detained plaintiff based on those false statements), *aff'd*, No. 14-6216 (6th Cir. June 2, 2015).

Here, Hicks alleges that Riley participated in the investigation by stopping a black Mercedes and speaking with its driver, then wrote an arrest warrant that falsely stated multiple witnesses had provided good descriptions of the suspect and identified Hicks as the mailbox tamperer knowing that only Absher had provided a description of the suspect and identified Hicks. Based on Riley's warrant, Hicks was arrested and transported to the Sumner County Jail, held on a $500 bond for mailbox tampering, and prosecuted for that offense. (Doc. No. 1.) Liberally construed, these allegations are sufficient to support an inference that Riley participated in the decision to prosecute Hicks. Hicks has therefore stated a claim for malicious prosecution under § 1983 and Tennessee law against Riley.[5] *See Miller*, 2014 WL 4960961, at *1; *cf. Roberts*, 842 S.W.2d at 247 (denying defendant employer's motion for summary judgment on malicious prosecution claims under Tennessee law arising from employer's "caus[ing] an arrest warrant to be issued charging Plaintiff with grand larceny"). Riley is not entitled to dismissal on this ground.

### b. Collateral Estoppel or Issue Preclusion

Pearce and Riley argue that Hicks's malicious prosecution claims are barred by the doctrine of collateral estoppel because the Sumner County General Sessions Court determined that probable cause supported the mailbox tampering charge at Hicks's preliminary hearing. (Doc. No. 25.)

---

[5] Riley also argues that Hicks has abandoned his state-law malicious prosecution claims by "fail[ing] to respond to Officer Riley's argument in Part IV.D" of the motion to dismiss. (Doc. No. 40, PageID# 206.) While Riley is correct that Hicks's response does not specifically cite the section of the motion to dismiss that contains Riley's arguments about these claims, Hicks has addressed the substance of the argument Riley makes in that section. (Doc. No. 39.) The Court finds that he has not abandoned his state-law claims.

13
Case 3:21-cv-00837   Document 53   Filed 08/22/22   Page 13 of 20 PageID #: 341

The doctrine of collateral estoppel "serves to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *United States v. Mendoza*, 464 U.S. 154, 158 (1984) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Collateral estoppel "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Ga.-Pac. Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (quoting *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990)). It is an affirmative defense that may be waived if not raised by the party seeking to assert it. *Gilbert v. Ferry*, 413 F.3d 578, 579–80 (6th Cir. 2005). As such, the party asserting the defense bears the burden of proving that it applies. *Spilman v. Harley*, 656 F.2d 224, 229 (6th Cir. 1981).

Where, as here, a party argues that a state court's determination of an issue should be given preclusive effect, federal courts apply that state's law to determine whether collateral estoppel applies. *See Haring v. Prosise*, 462 U.S. 306, 313 (1983) (noting that, under 28 U.S.C. § 1738, federal courts must "'give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.'" (quoting *Allen*, 449 U.S. at 96)). To establish that collateral estoppel applies to the issue of probable cause in this case, Tennessee law requires Pearce and Riley to show:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016) (quoting *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009)).

Pearce and Riley argue generally that elements one through four have been satisfied because Hicks alleges that he was represented by counsel in the state criminal proceedings; that the arresting officer, Pearce, and complaining witness, Absher, testified at the preliminary hearing; and that the case was ultimately bound over to the grand jury on a finding of probable cause. (Doc. No. 25.) As for the fifth element, Pearce and Riley argue that Hicks has not alleged in the complaint "that he was not given a full and fair opportunity to contest probable cause at the preliminary hearing" and that Hicks's allegations "show[ ] that [he] had a full and fair opportunity to contest the issue of probable cause at his preliminary hearing and lost." (*Id.* at PageID# 97–98.) In response, Hicks argues that Pearce gave "intentionally false and misleading testimony" during the preliminary hearing that was "relevant to the . . . finding of probable cause" and that the falsity of that testimony deprived him of a full and fair opportunity to litigate the issue. (Doc. No. 39, PageID# 203–04.) Pearce and Riley reply that Hicks had a full and fair opportunity to challenge "Pearce's credibility . . . at the preliminary hearing" (Doc. No. 40, PageID# 207) and cite portions of a transcript of Hicks's probable cause hearing that are part of the record as an exhibit to a different filing.[6] (Doc. No. 38-1).

---

[6]  Pearce and Riley filed the preliminary hearing transcript as an exhibit to their response to Hicks's motion for an extension of time to file an amended complaint. (Doc. No. 38.) They do not ask the Court to consider the transcript of Hicks's probable cause hearing in their motion to dismiss. Instead, they assert in their reply brief that "the Court may take judicial notice of the transcript . . . and consider it in connection with the motion to dismiss." (Doc. No. 40, PageID# 208).

The Court may take judicial notice of the transcript without converting Pearce and Riley's motion to dismiss into a motion for summary judgment. *See Garton v. Crouch*, No. 3:21-cv-00338, 2022 WL 275519, at *6–7 (M.D. Tenn. Jan. 28, 2022) (taking judicial notice of transcript of plaintiff's preliminary hearing, filed as an exhibit to a motion to dismiss, for purposes of

The purpose of a preliminary hearing is to determine whether there is enough evidence at the initiation of a criminal case for a reasonable person to find by probable cause that a crime was committed and the defendant committed it. Tenn. R. Crim. P. 5.1(a)(1). It is "'not to discover the state's case.'" *Boucher v. Johnson City Tennessee, et al.*, No. 2:19-cv-45, 2019 WL 4316866, at *4 (E.D. Tenn. Sept. 11, 2019) (quoting Tenn. R. Crim. P. 5.1, Advisory Commission Comments). The Tennessee Court of Appeals has held "that a finding of probable cause in the general sessions court does not, in and of itself, preclude a finding of lack of probable cause in a subsequent civil action for malicious prosecution" but that,

> when testimony which, if unrefuted, would be sufficient to establish probable cause, is tested by cross-examination in a court of law, then a trial court dealing with a malicious prosecution is entitled to find that probable cause has been established, and that the defendant is entitled to judgment as a matter of law.

*Yant v. Arrow Exterminators, Inc.*, No. 01-A-01-9801-CV00004, 1999 WL 43239, at *3 (Tenn. Ct. App. Feb. 1, 1999).

---

determining whether collateral estoppel barred plaintiff's First Amendment claim). But Pearce and Riley have not addressed why the Court should do so when the transcript was filed in the context of a different motion, was not relied on in their motion to dismiss, and was raised for the first time in their reply brief for that motion.

"It is well-settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues 'deprives the non-moving party of its opportunity to address the arguments.'" *Malin v. JPMorgan*, 860 F. Supp. 2d 574, 577 (E.D. Tenn. 2012) (quoting *Cooper v. Shelby Cnty.*, No. 07-2283, 2010 WL 3211677, at *3 (W.D. Tenn. Aug. 10, 2010)). "[W]hile a district court nonetheless has the discretion to consider an issue raised in a reply brief, or new evidence submitted with a reply, it must first give the opposing party a reasonable opportunity to respond to the new argument or evidence. Failure to do so is an abuse of discretion." *McGruder v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:17-cv-01547, 2020 WL 4586171, at *2 (M.D. Tenn. Aug. 10, 2020 (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481–82 (6th Cir. 2003)). By waiting until their reply brief to identify specific portions of the transcript that they believe support the application of collateral estoppel and to argue that the Court should take judicial notice of the transcript, Pearce and Riley deprived Hicks of the opportunity to meaningfully address those arguments. *See Malin*, 860 F. Supp. 2d at 577. The Court declines to consider the preliminary hearing transcript in resolving this motion.

The Sixth Circuit recognizes the general principle "that[,] where 'the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action.'" *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987)). The Sixth Circuit also recognizes that not "every determination in a preliminary hearing should be given preclusive effect in a subsequent section 1983 action. Some preliminary hearings are little more than formalities." *Coogan*, 820 F.2d at 175.

The Sixth Circuit has found a specific exception to the general rule of preclusion for cases in which plaintiffs "base[ ] their malicious prosecution claim in federal court on the grounds that the defendant-officers had knowingly supplied the magistrate with false information in order to establish probable cause." *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *Josey v. Salisbury*, No. 92–2093, 1993 WL 476974 (6th Cir. Nov. 18, 1993). In such cases, there is no identity of issues between the two proceedings because the plaintiffs "[are] not attempting to relitigate the identical issue of whether probable cause exists [in the malicious prosecution action]; rather, they [are] arguing that the officers misstated material facts in order to establish probable cause at the state level." *Id.*; *see also Josey*, 1993 WL 476974, at *2 (holding that, in malicious prosecution action, "the core issue is whether the officers misstated the facts to establish probable cause; at the preliminary hearing, the central question was whether there was probable cause. While the two inquiries are clearly related, they are not identical.") (citing *Schertz v. Waupaca Cnty.*, 875 F.2d 578, 581 (7th Cir. 1989) as "recogniz[ing] the difference between challenging the integrity, rather than the sufficiency of the evidence presented"). This Court has therefore found that "preclusion does not attach to an earlier probable cause determination where there are

17
Case 3:21-cv-00837   Document 53   Filed 08/22/22   Page 17 of 20 PageID #: 345

allegations and evidence that it was influenced by falsified evidence." *York v. City of Lewisburg*, No. 1:19-cv-00098, 2022 WL 411843, at *3 (M.D. Tenn. Feb. 9, 2022) (citing *Ballanger v. City of Chattanooga*, No. 1:11-CV-107, 2012 WL 3597417, at *5 (E.D. Tenn. Aug. 20, 2012) and *Day v. Ingle's Markets, Inc.*, No. 2:01-CV-325, 2006 WL 239290, at *3 (E.D. Tenn. Jan. 25, 2006)). Tennessee courts also do not apply collateral estoppel where there the two causes of action can be distinguished in this way. *Dickson v. Godfrey*, 825 S.W.2d 692, 694 (Tenn. 1992) ("'The familiar rule is that where the two causes of action are different, the judgment in the first suit is binding as an estoppel only as to those matters in issue, the inquiry being what point or question was actually litigated and determined in the original action, not what might have been litigated and determined.'") (quoting *Cline v. Cline*, 270 S.W.2d 499, 502 (1954)). Hicks argues that Pearce gave "intentionally false and misleading testimony" during the preliminary hearing that was "relevant to the . . . finding of probable cause." (Doc. No. 39, PageID# 203–04.) His claims in this case are therefore related but not identical to the probable cause determination made at his preliminary hearing. Pearce and Riley have not established the first element of collateral estoppel under Tennessee law. *Bowen*, 502 S.W.3d at 107.

Hicks further argues that "[d]ispatch tapes"—which the Court assumes Hicks received in discovery in his criminal proceedings—"later show[ed]" facts that conflict with Pearce's preliminary hearing testimony. (*Id.* at 203.) For example, Hicks alleges that Pearce testified that the driver of the car that Riley stopped matched the suspect description police had been given (Doc. No. 1), but that "[d]ispatch audio later showed" that testimony to be false (Doc. No. 39, PageID# 203). Courts have also declined to apply collateral estoppel to bar a malicious prosecution claim where the plaintiff did not have access to discovery at the preliminary hearing. *See Diamond v. Howd*, 288 F.3d 932, 935–36 (6th Cir. 2002) (holding in case applying Tennessee law that, when

18

a party "[is] not entitled to discovery before [the] state preliminary hearing, it is not at all clear that . . . [the] preliminary hearing would support collateral estoppel"); *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (finding that "state [preliminary] hearing did not provide . . . a full and fair opportunity, for collateral estoppel purposes, to litigate the issue of probable cause" in part because the claimant had no access to police investigative file before hearing); *Whitley v. Seibel*, 676 F.2d 245, 249–50 (7th Cir. 1982) (finding that state preliminary hearing did not provide a basis for collateral estoppel where discovery was unavailable before the hearing and preliminary probable cause determination was not appealable); *Boucher*, 2019 WL 4316866, at *4 (denying motion to dismiss based on Tennessee's collateral estoppel standard because, among other things, "it [was] unclear if Plaintiff had access to the state's investigative file before the hearing to assist in his cross examinations").

Hicks alleges that Pearce gave false testimony at the preliminary hearing and argues that later-obtained evidence supports that finding. Both arguments provide grounds on which to find collateral estoppel does not bar Hicks's malicious prosecution claims under Tennessee law. Pearce and Riley have not met their burden at the pleading stage to show that Hicks's claims should be dismissed on that basis.

## IV.     Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Gay and the State of Tennessee's motion to dismiss (Doc. No. 18) be GRANTED and Pearce and Riley's motion to dismiss (Doc. No. 24) be GRANTED as to Hicks's false arrest claims under § 1983 and Tennessee law and DENIED as to his malicious prosecution claims.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided.

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 22nd day of August, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge